UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                        )
                                        )
**FRANCISCO SOTO,**                     )
                                        )
       Petitioner,             )      06 Civ. 5816 (SCR)(LMS)
                                        )
  *- against -*                         )
                                        )      **REPORT AND**
**JOHN J. DONELLI, Superintendent,**    )      **RECOMMENDATION**
**BARE HILL CORRECTIONAL FACILITY**     )
                                        )
       Respondent.             )
_____)

TO:    THE HONORABLE STEPHEN C. ROBINSON,
        UNITED STATES DISTRICT JUDGE

      Pro se petitioner, Francisco Soto ("Petitioner"), files this petition for a Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his sentence pursuant to Westchester County Indictment Number 02/1217 which charged Petitioner with two counts of Criminal Sale of a Controlled Substance In or Near School Grounds (N.Y. Penal Law § 220.44(2)), two counts of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39(1)), two counts of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16(1)) and two counts of Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03). Pet. at 1; Resp't Aff. at 1. After a jury trial, Petitioner was convicted of one count of Criminal Sale of a Controlled Substance In or Near School Grounds (N.Y. Penal Law § 220.44(2)), one count of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39(1)), and one count of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law §

1

220.16(1)).  T: (Docket # 12 – Deliberations) at 1703-1709.[1]  On December 16, 2003, Petitioner was sentenced as a predicate felony offender to an indeterminate sentence of imprisonment of eight to sixteen years for each count, to run concurrently.  T: (Docket #13 – Sentence) at 18-19.  Petitioner was previously incarcerated at the Queensboro Correctional Facility in Queens, New York but was released on February 7, 2008, under supplemental merit parole supervision.

Petitioner seeks habeas relief on two grounds: (1) that Petitioner's Sixth Amendment rights were violated when the trial court limited his cross examination of a witness and (2) that Petitioner's Due Process rights were violated when the trial court allowed the unnoticed testimony of two witnesses' pre-trial identifications.  Pet. Mem. of Law.[2]

## I.  BACKGROUND

### A.  The Crimes

On June 28, 2002, undercover investigator Donell Coeffer ("Coeffer") was part of a team of law enforcement officers assigned to carry out an undercover drug buy in the area of Elliot Avenue in Yonkers, New York.  T: (Docket #11 – Jury Trial) at 644.  Coeffer approached a black female, looking for drugs, and the woman directed him to Petitioner.  Id. at 647-48, 656.  Coeffer then entered the vestibule of a building where he purchased drugs from the Petitioner.  Id. at 663-669.  The place where the drug sale took place is within 100 feet of the Maria Del Hostos Micro School.  T: (Docket #8 – Jury Trial) at 1054-57.

---

[1]Hereinafter, "T" refers to one of the many volumes of state court transcripts in this case.  The volumes of the transcript will be differentiated by the Docket number and a title.

[2]What will be referred to as "Petitioner's Memorandum of Law" is not a formal, separate Memorandum but merely an expansion of Petitioner's answer to the question of grounds on page 4 of the Petition.  As the expanded answer is attached to the petition and separately paginated, hereinafter, it will be referred to as "Petitioner's Memorandum of Law."

On July 2, 2002, Coeffer again allegedly bought drugs from Petitioner. Id. at 904-918; T: (Docket #11 – Jury Trial) at 729-732. During this transaction, Officers Michael Panico ("Panico") and Brian Menton ("Menton") observed Coeffer and Petitioner through binoculars from a police observation van. T: (Docket #8 – Jury Trial) at 904-918. However, the jury did not reach a verdict on the counts in the indictment that charged this crime. T: (Docket # 12 – Deliberations) at 1711-1713.

### B.    Procedural History

Petitioner was indicted in Westchester County, Indictment number 02/1217, for two counts of Criminal Sale of a Controlled Substance In or Near School Grounds (N.Y. Penal Law § 220.44(2)), two counts of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39(1)), two counts of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16(1)) and two counts of Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03). Pet. at 1; Resp't Aff. at 1.

Before trial commenced, the court held a *Wade* hearing[3] to deal with issues surrounding the photo identifications of Petitioner by Officers Coeffer, Panico and Menton. See generally T: (Docket #14, 16, 17, and 18 – *Wade* Hearing). One of the issues addressed at this hearing was defense counsel's request to suppress the identifications made by Panico and Menton, because the prosecution had not properly served notice by form C.P.L. 710.30(1) that these officers were going to testify to the identity of Petitioner. T: (Docket #14 – Hearing Decision) at 4. Evidence

---

[3]The purpose of a *Wade* hearing is to determine before trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification. See United States v. Wade, 388 U.S. 218 (1967).

was presented which established that Officer Coeffer viewed a book of photographs after the June 28, 2002, encounter with Petitioner and identified Petitioner's photograph as the person who had just sold him drugs in the vestibule on Elliot Avenue, although he admitted that he could not be 100% positive. T: (Docket #16 – *Wade* Hearing) at 19-23, 45, 58.  Coeffer testified that he viewed the same book of photographs before he went out for the second buy on July 2, 2002, and again identified Petitioner as the one who had sold him drugs on June 28, 2002. Id. at 49.  Coeffer also identified Petitioner's photograph in the book after he allegedly bought drugs from the Petitioner on July 2, 2002. T: (Docket #17 – *Wade* Hearing) at 103.  Coeffer identified Petitioner's photograph in the presence of both Detective Panico and Detective Menton. Id.; T: (Docket #18 – *Wade* Hearing) at 17-19.  The hearing court ruled that the identifications made by Officers Coeffer, Panico and Menton were "at a place in time sufficiently connected and contemporaneous to the arrest itself as to constitute the ordinary and proper completion of an intrical (sic) police procedure; and therefore, were confirmatory." T: (Docket #14 – *Wade* Hearing Decision) at 9-10.  The court also ruled that "[n]otice pursuant to 710.30 of the C.P.L. was not required; and [Petitioner's] motion to preclude identification testimony by Investigator Panico and Detective Menton at trial is denied." Id. at 10.

    After a jury trial, Petitioner was convicted of one count of Criminal Sale of a Controlled Substance In or Near School Grounds (N.Y. Penal Law § 220.44(2)), one count of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39(1)), and one count of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16(1)), all based on the sale occurring on June 28, 2002. T: (Docket # 12 – Deliberations) at 1703-1709.  The jury did not reach a verdict on any of the counts arising out of the sale allegedly

made on July 2, 2002. On December 16, 2003, Petitioner was sentenced as a predicate felony offender to an indeterminate sentence of imprisonment of eight to sixteen years for each count, to run concurrently. T: (Docket #13 – Sentence) at 18-19. At sentencing, the People dismissed the counts on which the jury had been unable to reach a verdict. Id. at 19.

Petitioner appealed his conviction to the Appellate Division of the Supreme Court, Second Department, on November 30, 2004. Resp't Ex. A (Appellate Brief). By Decision and Order, the Appellate Division affirmed Petitioner's conviction, stating specifically that "defendant's contention that the People were required to provide him with notice of the identification testimony of the officers who witnessed one of the buys is without merit...no such notice was required" and that the "defendant's remaining contentions are without merit." People v. Soto, 22 A.D.3d 511, 511-12 (2nd Dept. 2005). Petitioner then sought leave to appeal to the New York State Court of Appeals, which was denied. Resp't Ex. G (Certificate Denying Leave). On June 21, 2006, Petitioner timely filed this petition for a writ of habeas corpus, and he has no other petitions or appeals pending regarding this matter. Pet. at 6.

## II.   DISCUSSION

### A.   Standard of Review

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); see

also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."  See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190-91 (2d Cir. 1982).  The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b), (c):

> (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied.  See Klein v. Harris, 667 F.2d 274, 282 (1981).  First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts.  Picard v. Connor, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' "  Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191).  In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature."  Daye, 696 F.2d at 192.  The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for

6

relief. Klein, 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. See Daye, 696 F.2d at 186; Irving v. Reid, 624 F. Supp. 787, 789 (S.D.N.Y. 1985).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See Klein, 667 F.2d at 282; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. Id. at 282-83.

Generally, a state prisoner has one year from the date his or her conviction becomes final

to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

**B.     Petitioner's Claims**

   **1.     *Petitioner's Sixth Amendment right to cross-examination was not violated.***

Petitioner contends that his Sixth Amendment right to cross-examination was violated when the court limited the questions that defense counsel could ask Officer Coeffer regarding his expertise in the area of identification. Pet. Mem. of Law at 1. Respondent argues that Petitioner's counsel engaged in a lengthy cross-examination of Officer Coeffer and the trial court's ruling to disallow two questions regarding the witness's expertise was not contrary to federal law. Resp't Mem. of Law at 3-8.

A defendant's right to cross-examination is established by the Sixth Amendment and

fully supported by Supreme Court precedent.  ("In all criminal prosecutions, the accused shall enjoy the right to...be confronted with the witnesses against him...." U.S. Const. amend. VI.) "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." Davis v. Alaska, 415 U.S. 308, 315 (1974).  "The right of cross-examination, through not absolute, is one of the most firmly established principles under Supreme Court law." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003).  However, that right is subject to certain limitations that fall within the discretion of the trial judge.  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1980).

     The Supreme Court has further held that "a criminal defendant states a violation of the Confrontation Clause by showing that he [or she] was prohibited from engaging in otherwise appropriate cross-examination...[that would] expose to the jury the facts from which jurors...could appropriately draw inferences relating to the reliability of the witness." Id. at 680.  Any such violation of the Confrontation Clause is "subject to harmless error analysis." Id. at 684.  Additionally, when such a claim is made in a habeas petition where the matter was adjudicated on the merits in the state court below, the petitioner must show that the state court decision either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law...or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Limitations on cross-examinations raised in habeas petitions have been found to have not violated the Confrontation Clause where the statements intended to be elicited were neither probative nor relevant (Fuller v. Gorczyk, 273 F.3d 212 (2d Cir. 2001)); where such cross-examination of a police witness would have led to potentially misleading hearsay (Buie v. Phillips, 298 Fed. Appx. 63 (2d Cir. 2008)); where the trial court limited questioning in light of the extensiveness of the testimony already elicited on cross-examination (Glisson v. Mantello, 287 F. Supp. 2d 414 (S.D.N.Y. 2003)); and where cross-examination would have probed matters deemed collateral (United States v. Crowley, 318 F.3d 401 (2d Cir. 2003)).

In this case, Petitioner has not met his burden of proving that the state court decision was in violation of clearly established Federal law.  Petitioner's claim revolves around two questions put to Officer Coeffer during cross-examination that sought to elicit whether Coeffer had any special expertise or training in the area of identification.  T: (Docket #11 – Trial) at 770.  The Prosecution objected to these questions, as Coeffer had not been presented as an expert in identification but merely as the law enforcement officer who identified Petitioner after the incident.  Id.  Defense counsel was permitted to fully investigate Coeffer's ability to recall Petitioner's physical attributes, the time surrounding the event, and physical details about others at the scene.  Id. at 768-796.  In limiting defense counsel's questions regarding Coeffer's expertise and training in identification, ostensibly to minimize juror confusion as Coeffer was not presented as an expert witness, the trial court properly applied clearly established Federal law.  Petitioner's claim, therefore, must be denied.

2.   ***Petitioner's claim regarding the lack of a New York C.P.L. § 710.30(1) notice for the introduction of Officer Panico's and Officer Menton's identification testimony is a matter of state law and, therefore, not reviewable in a habeas petition.***

Petitioner contends in his second claim that his due process rights were violated when the Prosecution did not provide a statutory notification of Officer Panico's and Officer Menton's identification testimony.  Pet. Mem. of Law at 6-11.  Respondent argues that the provision of a New York CPL § 710.30(1) notification is a matter of state law and does not rise to the level of a constitutional violation.  Resp't Mem. of Law at 9-12.

"Federal habeas relief 'does not lie for errors of state law.' " McCall v. Artus, No. 06 CV 3365 (SAS), 2008 WL 4501834 at *8 (S.D.N.Y. Sept. 29, 2008) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).[4]  In other words, ". . .a federal habeas court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Therefore, for Petitioner to sustain his cause of action, he must show that any error of state law – such as failing to provide a NY C.P.L § 710-30(1) notice – " 'render[ed] petitioner's state trial fundamentally unfair' and thus violated his constitutional due process rights." Herring v. Meachum, 11 F.3d 374, 377 (2d Cir.1993) (quoting Tribbitt v. Wainwright, 540 F.2d 840 (5th Cir. 1976).

The right to advance notification of a witness's identification testimony is guaranteed by statute in New York C.P.L. § 710.30(1).  In relevant part, it reads:

---

[4]In the spirit of Local Civil Rule 7.1(c), copies of the opinions with WestLaw cites are attached to the copy of this Report and Recommendation which is sent to Petitioner.

> Whenever the people intend to offer at a trial...testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

C.P.L. § 710.30(1).  Courts have continually held that such statutory notification is a matter of state law and not reviewable in a petition for a writ of habeas corpus.  See Dotson v. Ercole, No. 06 Civ. 7823 (BSJ)(DFE), 2009 WL 1615997 (S.D.N.Y. June 9, 2009); Espinal v. Duncan, No. 00 Civ. 4844 (RWS), 2000 WL 1774960 (S.D.N.Y. Dec. 4, 2000); Roberts v. Scully, 875 F. Supp. 182 (S.D.N.Y. 1995).  Specifically, where the state court has held a hearing and found that the "witness in question [has] not performed an out-of-court pretrial identification within the meaning of C.P.L. § 710.30(1)," then the federal courts, upon review in a habeas petition, have determined that "it is not within the province of [the federal court] to re-examine the state trial court's assessment."  Dotson, 2009 WL 1615997 at 2.  Additionally, federal courts reviewing habeas petitions have held that errors surrounding NY C.P.L. § 710.30(1) do not "reflect a claim of constitutional magnitude."  Scully, 875 F. Supp. at 191.  ("The Constitution does not guarantee a right to advance notice of identification testimony."  Dotson, 2009 WL 1615997 at 2.  See also Aziz v. Warden of Clinton Correctional Facility, No. 92 Civ. 0104 (JSM), 1992 WL 249888 (S.D.N.Y. Sept. 23, 1992)).

Petitioner's contention that the identification testimony of Officers Panico and Menton should have been suppressed was addressed at the comprehensive four day *Wade* hearing held by the trial court.  The court ruled that "[n]otice pursuant to 710.30 of the C.P.L. was not required; and [Petitioner's] motion to preclude identification testimony by Investigator Panico and Detective Menton at trial is denied."  T: (Docket #14 – *Wade* Hearing Decision) at 9-10.  As this

is an issue of state law that was determined by the state court in an extensive hearing, and, because errors surrounding NY C.P.L. § 710.30(1) do not rise to the level of a constitutional violation, Petitioner's claim must be denied.

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed. As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962)

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson.

Dated: April 8, 2010
      White Plains, NY

Respectfully submitted,

*[signature]*

LISA MARGARET SMITH
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

Honorable Stephen C. Robinson, U.S.D.J.
300 Quarropas Street
White Plains, New York 10601

Francisco Soto, #03-A-6833
1203 Midland Ave.
Yonkers, New York 10708

John James Sergi, Assistant District Attorney
Westchester County District Attorney's Office
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10552